UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLOS JUAN LUJAN-DIAZ,

v.                                                 Case No. 8:05-cr-385-T-17TBM
                                                      8:08-cv-664-T-17TBM
UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court on Defendant Carlos Juan Lujan-Diaz's 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence. (D-cv-19; D-164, 167). A review of the record demonstrates that the motion to vacate must be denied.

BACKGROUND

On September 3, 2005, personnel in a United States Coast Guard helicopter spotted a "go-fast" vessel in international waters off the coast of Colombia. PSR ¶ 9. The go-fast attempted to evade the helicopter while the crew aboard the go-fast jettisoned bales of cocaine. PSR ¶ 9. Coast Guard personnel eventually disabled the go-fast, boarded it, and arrested the boat's five crew members, including petitioner Carlos Juan Lujan-Diaz. PSR ¶¶ 9-10.

Subsequent Investigation revealed that crew member Fastino Garcia-Arrieta had acted as captain or master of the go-fast, PSR ¶ 11, and that Lujan-Diaz and a third crew member had counted the bales of cocaine for the smuggling venture. PSR ¶ 12. The investigation further revealed that the go-fast had met a refueling ship at sea to take on additional fuel for the venture. Id.

On September 7, 2005, a grand jury sitting in the Middle District of Florida returned an Indictment charging Lujan-Diaz and the rest of his crew members with possession with the intent to distribute at least five kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, and conspiracy to commit same. D-1. On December 14, 2005, following receipt of the government's Rule 16 discovery, Lujan-Diaz entered a guilty plea to the Indictment without a written plea agreement. D-56. At his subsequent sentencing hearing held on March 30, 2006, Lujan-Diaz requested a two-level reduction for minor role pursuant to USSG §3B1.2. D-131 at 5-7. He presented no evidence in support of this request, however, and instead relied on the following argument presented by his attorney, Daniel Daly.

> [T]he conspiracy charged in the indictment contemplates an awful lot more than just what was aboard the vessel on which Mr. Lujan-Diaz was found. It involved people who grew the cocoa leaves. It involved relatively bright people who turned the cocoa leaves into a sodium and . . . what we know as cocaine.
>
> It involved people who supervised that operation, paramilitary organizations. It involved transportation over land, packaging, supervisors, bankers, indeed shadow governments before it got on a vessel with Mr. Lujan-Diaz.
>
> Of course, on the other end of that organization are other nations, other organizations. All of this to transport cocaine, which is–if it's not the leading export of the nation of Col[o]mbia, is at least the second.
>
> It's probably the most valuable. It's the most volatile. It's caused Col[o]mbia to devolve into a civil war. Destabilized its government, and cast its economy into shambles.
>
> Mr. Lujan-Diaz'[s] role of assisting in the transportation of what--if it had hit this country--would be a huge bust leaving Col[o]mbia–it's a very small part of what's being exported.
>
> Ultimately, what I'm telling the Court is Mr. Lujan-Diaz is a small man, doing a very small role in a huge national operation in Col[o]mbia.

And as such, I believe he's a minor participant.

Id. at 5-7.

When reminded by the Court that Lujan-Diaz was not being held responsible for the extreme amounts of cocaine that obviously would have been involved in such a wide-ranging conspiracy, Lujan-Diaz's counsel argued:

> the 1,500 kilograms for which Lujan-Diaz was being held responsible] . . . is more than we're going to find here in the United States in your average bust. It is by virtue of it leaving its origin country, that it's so much . . .
>
> . . . [B]ecause it is the source, and close to the source, and part of a market that Mr. Lujan-Diaz has no history in creating, because it supplies a thirst that Mr. Lujan-Diaz didn't have anything in the way of creating, it is something that he got pulled into because there's not much else to do in Col[o]mbia owing to the economy in which he has to exist.
>
> And I maintain in the overall scheme of things, Mr. Lujan-Diaz even in this load, in the broader sense of things, is a minor participant.

Id. at 12.

The Court over-ruled Lujan-Diaz' minor role objection, citing the Eleventh Circuit's decision in *United States v. DeVaron*, 175 F.3d 930 (11 Cir. 1999) (*en banc*). D-131, at 14.

Lujan-Diaz also made a "motion" under 18 U.S.C. § 3553 for either a seven-year or nine-year sentence, both of which would have been below the low-end of the applicable United States Sentencing Guidelines range for his crime. D-131, at 13. In support of this motion, Lujan-Diaz' attorney argued:

> In the scheme of things and under the purposes of sentencing found at 3553, Mr. Lujan-Diaz is a young man, age 26; he has two children. By his offense against the United States he's due to forfeit some time.
>
> Let me tell the Court a previous story about a conversation I had with an Indian gentleman about the Court system in India. There are essentially three types of sentences in India: [t]he literal slap on the wrist, seven years and 14 years. 14 years being the top–pretty close to a life sentence in the Indian

3

> prison.
>
> It got me thinking about how we gauge our lives and mark our lives in seven-year increments. The age of reason is thought to be attained somewhere around the age of seven years old. First Holy Communion. First confessions. Confirmation [rites] into manhood in several religions are set at 14 years old.
>
> Age of majority is 21, and people are forced to retire after 10 7s, 70 years old.
>
> It's my thought that if that's how we regulate our lives or mark our lives, that perhaps our sentences might ought to be something similar to that.
>
> For that reason, and for this crime, I would actually suggest a seven-year sentence or in the alternative a nine-year sentence that would take Mr. Lujan-Diaz in a federal prison up to his 35th birthday or his 5th 7. That's my suggestion.

Id. at 17.

Lujan-Diaz then asked to have the "opportunity to return to [his] family and children soon." Id.

After hearing all of these arguments, the Court sentenced Lujan-Diaz principally to a 135 month term of imprisonment, which was the low end of the applicable guidelines range. In doing so, the Court stated that it had reviewed "the presentence report, pursuant to Title 18 United States Code Section 3551 and 3553, and the Sentencing Reform Act of 1984 as modified by U.S. v. Booker and Fan-Fan," and that it had found, after considering "the advisory sentencing guidelines and all the factors identified in Title 18 United States Code Section 3553(a)(1) through (7)[,] . . . that the sentence imposed is sufficient but not greater than necessary to comply with the statutory purposes of sentencing" and was "reasonable, adequate, and sufficient." D-131 at 21-23. The Court then asked for additional objections, and the parties voiced none. D-131 at 23.

Lujan-Diaz directly appealed his sentence to the Eleventh Circuit Court of Appeals (D-99), raising the following issues:

    a. Whether the Court clearly erred in finding that Lujan-Diaz was not entitled to a minor-role reduction pursuant to USSG §3B1.2; and

    b. Whether the Court plainly erred by imposing an unreasonable sentence.[1]

On January 17, 2007, the Eleventh Circuit affirmed Lujan-Diaz' sentence. *United States v. Lujan-Diaz*, 213 Fed. App'x 944 (11th Cir. 2007). D-157. Lujan-Diaz sought rehearing (Exhibit C), but did not thereafter seek further review from the Supreme Court. The instant motion, timely filed by Lujan-Diaz on April 7, 2008, followed.

## DISCUSSION

## I. LAW GOVERNING INEFFECTIVE ASSISTANCE CLAIMS

The gist of Lujan-Diaz' section 2255 motion is that his lawyer was constitutionally ineffective for failing to raise certain challenges to the evidence and the Indictment, and in failing to pursue various sentencing issues. The Sixth Amendment right to counsel is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). The burden is on the defendant to demonstrate that (1) counsel's performance fell below an objective standard of reasonable professional assistance and

---

[1] Lujan-Diaz's and the government's appellate briefs are attached to Doc. No. 11 as Exhibits A and B, respectively.

(2) the defendant was prejudiced by the deficient performance. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential, and courts "must avoid second- guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). The defendant's burden in this regard, though not insurmountable, is a heavy one. *See Chandler*, 218 F.3d at 1314. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. at 1315.

To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different. *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). If the defendant fails to show that he was prejudiced by the alleged errors of counsel, this Court may reject the defendant's claim without determining whether the counsel's performance was deficient. *Strickland,* 466 U.S. at 697; *Tafero v. Wainwright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

## II. LUJAN-DIAZ' FIRST CLAIM PREDICATED ON THE VIENNA CONVENTION ON CONSULAR RELATIONS IS ILL–DEFINED, AND OTHERWISE WITHOUT MERIT

In Ground One of his petition, Lujan-Diaz alleges that his attorney was constitutionally ineffective in failing to seek suppression of the evidence and dismissal of the Indictment, and in failing to seek a downward departure at sentencing based on the government's purported violation of Lujan-Diaz' rights under the Vienna Convention on Consular Relations. This claim has no merit.

As an initial matter, Lujan-Diaz' motion is conspicuously devoid of any factual assertions or legal authority that would support his claim. Instead, all the Court and the government are left with is Lujan-Diaz' bare and otherwise undeveloped allegation that his rights were somehow violated under the Vienna Convention on Consular Relations, and that his attorney was constitutionally deficient in failing to pursue this contention. It is well settled that such vague, conclusory and unsupported arguments cannot support an ineffective assistance of counsel claim as a matter of law, *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991), and this Sixth Amendment challenge should be denied on this basis alone.

In addition to being deficient on its face, Lujan-Diaz' claim is meritless as well. The Vienna Convention is a 79-article, multilateral treaty, which was negotiated in 1963 and ratified by the United States in 1969. See Vienna Convention, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 (ratified Nov. 24, 1969). As a properly ratified treaty, the Vienna Convention is the supreme law of the land. U.S. Const. art. VI, § 2, cl.2. Article 36 of the Vienna Convention deals specifically with "what a member state must do when a foreign national is arrested." *United States v. Lombera-Camorlinga*, 206 F.3d 882, 884 (9th Cir.

2000). The Eleventh Circuit has declined to find specifically that the Vienna Convention creates a private cause of action enforceable by individuals, but has held that, even if it does, no remedy is available absent a showing of prejudice. *United States v. Cordoba-Mosquera*, 212 F.3d 1194, 1196 (11th Cir. 2000); *see also United States v. Duarte-Acero*, 132 F. Supp. 2d 1036 (S.D. Fla. 2001), *aff'd*, 296 F.3d 1277 (11 Cir. 2002).

In this instance, Lujan-Diaz has failed to identify any prejudice he suffered due to the alleged lack of any consular notification and/or consultation. Nor can he. As at least one court in this circuit has held, "neither the suppression of evidence nor dismissal of an indictment [– which are the remedies Lujan-Diaz claims his attorney should have pursued here –] is an appropriate remedy for a violation of Article 36." *Duarte-Acero*, 296 F.3d at 1281.

## III. LUJAN-DIAZ' SECOND CLAIM PREDICATED ON THE PENALTIES SET FORTH IN THE "IMPORT-EXPORT STATUS" IS DEFICIENT ON ITS FACE AS WELL

Lujan-Diaz' claim that his attorney was constitutionally ineffective in failing to "move for application of the Minimum Mandatory sentence . . . under the penalties set forth in the Import-Export status" is similarly without merit. The Court cannot determine to what Lujan-Diaz is referring as "the penalties set forth in the Import-Export status." As Lujan-Diaz has failed to provide any legal authority, factual assertions or any further explanation regarding the basis for this claim, his otherwise vague and conclusory Sixth Amendment challenge must fail as a matter of law as well. *Tejada,* 941 F.2d at 1559.

## IV. LUJAN-DIAZ' THIRD CLAIM BASED ON HIS MINOR ROLE ARGUMENT HAS ALREADY BEEN REJECTED BY THIS COURT AND THE COURT OF APPEALS, AND THEREFORE CANNOT SUSTAIN A SIXTH AMENDMENT CHALLENGE AT THIS

JUNCTURE

Though couched as an ineffective assistance claim, this argument is essentially the same one that has already been rejected by this Court and the Court of Appeals. Lujan-Diaz has not tendered, much less established in his original motion to vacate, any extraordinary circumstance which would merit re-visiting this claim, and he should not now be allowed to re-litigate this contention simply by re-characterizing it as a Sixth Amendment challenge. *Cf. Schlup v. Delo*, 513 U.S. 298 (1995); *Davis v. United States*, 417 U.S. 333 (1974) (claims raised and disposed of in a previous appeal are procedurally barred); *United States v. United States Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950) ("[W]hen an issue is once litigated and decided, that should be the end of the matter."); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255."); *United States v. Hobson*, 825 F.2d 364, 366 (11th Cir. 1987) ("[T]he law is well settled that prior consideration of a defendant's sufficiency of evidence claim precludes further review" in a section 2255 proceeding), *vacated on other grounds*, 492 U.S. 913 (1989); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981) (claims raised and disposed of in a previous appeal are precluded from reconsideration in a § 2255 proceeding). Regardless, because this claim has been determined by this Court and the Court of Appeals to be substantively without merit, it cannot sustain an ineffectiveness assistance claim at this juncture.

**V. LUJAN-DIAZ' FINAL SIXTH AMENDMENT CHALLENGE BASED ON HIS SECTION 5K2.0 DOWNWARD DEPARTURE ARGUMENT IS LIKEWISE WITHOUT MERIT**

Lujan-Diaz finally contends that his counsel was constitutionally ineffective in failing

to seek a downward departure at sentencing pursuant to section 5K2.0 based on Lujan-Diaz' incarceration in county jails and his inability to participate in prison programs available to U.S. citizens. As with his other Sixth Amendment challenges, this claim is likewise without merit.

It is noteworthy as an initial matter that Lujan-Diaz's attorney did pursue, albeit unsuccessfully, several downward departure motions on Lujan-Diaz' behalf based on the advisory guidelines and the sentencing factors set forth in 18 U.S.C. § 3553(a). See D-131 at 4-18. Counsel cannot be deemed constitutionally ineffective merely because he did not prevail on these arguments.

Nor can Lujan-Diaz establish a valid Sixth Amendment claim merely by pointing to some hypothetical sentencing arguments that his attorney might have additionally raised on his behalf. As the Court is well aware, so-called "boat cases" such as this one are routine in this district, and present a number circumstances that are similar, if not identical, from one to the next. These include the incarceration of boat defendants – most, if not all, of whom are non-citizens – in county jails while they await disposition of their criminal proceedings. Such circumstances are not only well known to the Court, they do not constitute grounds for a downward departure. *United States v. Veloza*, 83 F.3d 380, 382 (11th Cir. 1996) (unavailability of preferred conditions of confinement, possibility of an additional period of detention pending deportation following the completion of the sentence, and effect of deportation as banishment from the United States and separation from family were consequences of a defendant's alienage that did not warrant a departure). As Lujan-Diaz has failed to identify any extraordinary hardship he has suffered which would make his case unique from the literally thousands of other similarly-situated boat

defendants who have been sentenced in this district, this Sixth Amendment challenge must fail as well.

## Amended Petition Background and Discussion

On April 7, 2008, petitioner Carlos Juan Lujan-Diaz timely filed his original section 2255 motion raising the following four ineffective assistance of counsel claims: (1) that his attorney erred in failing to seek suppression of the evidence and dismissal of the Indictment, and in failing to seek a downward departure, based on the government's purported violation of Lujan-Diaz' rights under the Vienna Convention on Consular Relations; (2) that his attorney erred in failing to "move for application of the Minimum Mandatory sentence . . . under the penalties set forth in the Import-Export status;" (3) that his attorney erred in failing to properly and effectively argue for a minor role reduction; and (4) that his counsel erred in failing to seek a downward departure pursuant to USSG §5K2.0 based on Lujan-Diaz's incarceration in county jails and his inability to participate in prison programs available to United States citizens. (D-cv-1, at 4-8).

On June 17, 2008, the government filed its response in opposition to Lujan-Diaz's motion, (D-cv-11), and Lujan-Diaz subsequently sought – and was granted – additional time to file a reply to that response, (D-cv-13; D-cv-15; D-cv-14; D-cv-16). On September 10, 2008, however, Lujan-Diaz filed a motion seeking to amend/correct his original section 2255 motion. (D-cv-17). The Court granted that request, (D-cv-18), and, on October 6, 2008, Lujan-Diaz filed the instant amended section 2255 motion, (D-cv-19).

In his amended petition, Lujan-Diaz seeks to supplement his third Sixth Amendment claim regarding minor role, arguing that his attorney was constitutionally ineffective at sentencing in failing to "discuss[] what the [p]etitioner's actual role was compared to the

other four members of the conspiracy." (D-cv-19, at 5). In support of this argument, Lujan-Diaz contends that his attorney erred in "attempt[ing] to present his role in terms of the overall relative significance of the crime," and asserts that this tactical decision "effectively denied . . . [him] the ability to properly present his relatively minor role in the offense." Id. Lujan-Diaz' amended Sixth Amendment claim should be rejected for a number of reasons. First, as the government argued in its original response, Lujan-Diaz' minor role argument – though couched as an ineffective assistance claim – is essentially the same one that has already been rejected by this Court and the Court of Appeals. (D-cv-11, at 10). As before, Lujan-Diaz has not tendered, much less established, any extraordinary circumstance which would merit re-visiting this claim, and he should not now be allowed to re-litigate this contention simply by re-characterizing it as a Sixth Amendment challenge. (Id. at 10-11).

In addition to this procedural bar, Lujan-Diaz' amended Sixth Amendment claim is unsustainable under *Strickland*'s two-prong analysis as well. (Id. at 6). With respect to the first prong of that analysis, Lujan-Diaz has still not shown that his attorney's performance fell below an objective standard of reasonable professional assistance. Simply put, the manner in which Lujan-Diaz' attorney presented the minor role argument was the product of a strategical decision that was entirely reasonable given the facts of the case. *Strickland v. Washington*, 466 U.S. 668, 689-90 (1984) ("counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy'").

While Lujan-Diaz may now wish to second guess that tactical decision, the mere fact that it did not ultimately prove successful does not undermine the "strong presumption" that it was made in the exercise of the attorney's sound professional judgment. *Chandler v.*

*United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) ("Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'") (quoting *Strickland,* 466 U.S. at 689-90).

Nor can Lujan-Diaz establish that he suffered the requisite prejudice under *Strickland*'s second prong. To make such a showing, Lujan-Diaz must demonstrate that there is a reasonable probability that, but for his attorney's allegedly unprofessional errors, the result of his sentencing would have been different. *Strickland,* 466 U.S. at 694. This he cannot do.

In its seminal decision in *United States v. De Varon*, 175 F.3d 930 (11th Cir. 1999) (en banc), the Eleventh Circuit instructed sentencing courts to examine a number of specific "relevant factual considerations" in assessing whether drug couriers – such as Lujan-Diaz – are entitled to minor role reductions. *Id.* at 944. These include the "amount of drugs" involved, the "fair market value" of those drugs, the "amount of money to be paid to the courier," the courier's "equity interest in the drugs," the courier's "role in planning the criminal scheme," and the courier's "role in the distribution." *Id.* While noting that this list was not exhaustive and that no one factor was necessarily more important than another, the Court in *De Varon* did emphasize that, at least "in the drug courier context, . . . the amount of drugs imported is a material consideration in assessing a defendant's role in h[is] relevant conduct." *Id.* at 943. The Court went out to note in this regard:

> Indeed, because the amount of drugs in a courier's possession – whether very large or very small – may be the best indication of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that [the] amount of drugs may be dispositive – in and of itself – in the extreme case.

13

*Id.* (citing with approval *United States v. Garvey*, 905 F.2d 1144, 1146 (8th Cir. 1990) (per curiam) (recognizing that district court may refuse "to grant a minor and/or minimal participant reduction based solely on the significant amount of drugs involved.")).

In this case, in addition to the reasons relied upon by the Eleventh Circuit in rejecting Lujan-Diaz' minor role argument on appeal, it is undisputed that Lujan-Diaz was involved in the transportation of an extraordinary large quantity of cocaine. Since *De Varon*, the Eleventh Circuit has strongly suggested in a number of decisions – albeit unpublished ones – that such an extreme amount of narcotics may alone be dispositive of the minor role issue. *See e.g., United States v. Ochea-Moreno*, 199 Fed. App'x 839, 2006 WL 2826937, at *4 n.2 (11th Cir. Oct. 4, 2006) (per curiam) (rejecting minor role argument by defendant involved with transporting 4,000 aboard fishing vessel, and noting that "we have held that the amount of drugs may be dispositive in extreme cases, and therefore, the large amount of cocaine involved in this case is arguably dispositive of the minor-role issue."). *United States v. Valencia-Aguirre*, 130 Fed. App'x 305, 308 (11th Cir. April 29, 2005) (holding that the three (3) tons of cocaine defendant was involved in transporting aboard fishing boat was "large enough to be dispositive" of defendant's minor role argument).

Furthermore, as the government noted at sentencing, the cocaine shipment that Lujan-Diaz and his co-horts were transporting was worth millions of dollars, and Lujan-Diaz was "paid a substantial sum of money, in the neighborhood of 15 to $20,000[,] to carry out what [wa]s really an essential role to th[e] conspiracy." (D-131, at 8-9). Finally, contrary to Lujan-Diaz' present assertion that he was nothing more than a "cabin-boy," (D- cv-19, at 5), his actual role aboard the go-fast vessel was that of "a load guard charged with the responsibility on behalf of the owners of th[e] cocaine to ensure its arrival." (D-131, at 10).

Nothing about that role can reasonably be considered to be minor, regardless of how Lujan-Diaz' attorney may have sought to characterize it at sentencing.

While not subjected to an enhancement for this, there was information in the PSR that the defendant was in the possession of a weapon. (D-131 at 10-11).

Accordingly, the Court orders:

That Defendant Carlos Juan Lujan-Diaz' 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence. (D-cv-19; D-164, 167) is denied. The Clerk is directed to enter judgment against Defendant and to close this case.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not

entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 27, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE


AUSA: Christopher P. Tuite
Pro Se Lujan-Diaz